UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) NO. 04-30004-MAP | |
| | ) | |
| ROOSEVELT ARCHIE | ) | |

DEFENDANT'S MOTION TO SUPPRESS

Now comes the defendant in the above entitled action and moves this Honorable Court pursuant to Federal Rules Crim. Pro. Rule 41 for an order suppressing certain items of evidence seized pursuant to a search warrant, and as his basis, therefore, asserts the following:

On April 17, 2003 officers of the Chicopee Police Department sought and obtained a search warrant in statutory form for the residence known as 368 meadow Street, Chicopee, Massachusetts and a 1998 Honda automobile.

At some time after 10:30 p.m. on April 17, 2003 officers of the Chicopee Police Department made entry into the premises and the interior of the motor vehicle without announcement.

As a result of the execution of the warrant, certain items of evidence were seized all as described in the officer's return on the warrant, a copy of which is annexed hereto as an exhibit.

During the course of the warrant's execution the defendant was interrogated in a custodial setting and upon information and belief, made certain admissions.

The defendant believes, and therefore avers, the Government intends to introduce the items seized and statement/admissions made during the course of the execution of the warrant.

The Government ought not to be permitted to introduce said evidence for the following reasons:

1. The applications, accompanying affidavits and search warrants, failed to comply with the provisions of M.G.L. ch. 276 secs. 1, 1A,2,2A,2B and 2C.

2. The applications sworn in support of the search warrants, fails to establish facts sufficient, as a matter of law, to justify the issuance of a search warrant authorizing the search of any persons present.

3. The search warrants failed to particularly describe the person and/or items of evidence to be searched and seized.

4. Execution of the warrant was undertaken in violation of the Common Law of the Commonwealth of Massachusetts.

5. The executing officers exceeded the scope of the search permitted by the warrants and rendered the search a general search in violation of law.

6. The affidavit sworn in support of search warrant #03-20CR failed to establish probable cause for the issuance thereof.

7. The affidavits sworn in support of the search warrants contained stale information, insufficient as a matter of law, to establish the required level of probable cause for the issuance thereof.

8. Officers executing warrants used the purported authority of the warrant to make searches and seizure of property specifically not covered by the search warrant.

9. The executing officer made numerous and repeated seizures of items which were not particularly described by the terms and limitation of the warrant.

The defendant asserts, as to all oral statements, violations of his rights as guaranteed by the 5th, 6th and 14th Amendments to the United States Constitution, and Title 18 sec. 3501.

The defendant more specifically asserts the statements:

1. Were taken without being fully or properly advised of <u>Miranda</u> rights;
2. Were taken without a knowing, intelligent and/or voluntary waiver of <u>Miranda</u> rights;
3. Were involuntary;
4. Were taken as a result of continued interrogation after the right to counsel was invoked;
5. Were taken without the defendant being allowed to use the telephone in the time allowed by statute;
6. Were taken as a result of a violation of defendant's right to prompt arraignment and/or right to be presented to Magistrate.

WHEREFORE, the defendant said items of evidence and evidence derived therefrom was obtained in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and that the evidence so obtained be suppressed at the trial of these indictments in anticipation of further discovery by way of evidentiary hearing; leave is sought to

amend and supplement the grounds and basis alleged in support of the motion to suppress and for the filing of an additional memorandum of law in order to properly focus the relevant issues for the Court's consideration.

THE DEFENDANT

BY: _____
Vincent A. Bongiorni, Esq.
95 State Street, Ste 309
Springfield, MA. 01103
(413) 732-0222
BBO #049040

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
vs. ) No. 04-30004-MAP
)
ROOSEVELT ARCHIE )

MEMORANDUM OF LAW IN SUPPORT OF

MOTION TO SUPPRESS

FACTS

On April 17, 2004 officers of the Chicopee Police Department applied for and received a search warrant for 368 Meadow Street, Apt. 2R and a 1998 Gray Honda automobile

The single warrant application sought permission to search both the residence and the motor vehicle. The warrant which issued purported to grant that permission.

The search warrant was executed at approximately 10:30 p.m. on April 17, 2003. The warrant as issued did not permit an unannounced entry. It did authorize the search of any person present and also authorized a search at any time of night.

The affidavit accompanying the search warrant consisted of two pages containing seven paragraphs. During the course of executing the search warrant the defendant was detained. The officers claimed the defendant made a series of statements during the search of the apartment and later, while in the holding area of the Chicopee Police Station

PROBABLE CAUSE

Separate and apart from the definition of probable cause, one essential question serves as the appropriate focus for the judge or magistrate who determines whether an affidavit in support of a search warrant application evidences probable cause; is there a substantial basis on which to

1

conclude that the criminal article or activity described is probable present or occurring at the place to be searched.

From this focus, a general rule emerges for evaluating an affidavit to determine whether probable cause exists for the issuance of a search warrant; probable cause requires evidence establishing a substantial basis for the belief that there is a timely nexus or connection between criminal activity, a particular place or person to be searched, and a particular item to be seized from that place or person.

All of these considerations must coalesce within the four corners of the application and affidavit to find probable cause for the issuance of a search warrant; 1) timely nexus between 2) criminal activity, 3) a particular person or place to be searched, and 4) a particular item to be seized from that place or person.

Probable cause is the product of probabilities, not absolutes. The principle issue in any probable cause analysis is whether the magistrate had a "substantial basis on which to conclude that the articles or activity described [was] probably present or occurring at the place to be searched.

The Fourth Amendment to the Federal Constitution requires a magistrate to determine that probable cause exists before issuing a search warrant. The requisite probable cause for the search of the dwelling must be contained within the four corners of the affidavit. Probable cause sufficient to support the issuance of a search warrant is "something more than mere suspicion, but something less than evidence sufficient to warrant a conviction." The issuing magistrate and reviewing court may rely only upon information expressly recited within the affidavit and inferences which may reasonably drawn from the affidavit.

2

For evidence to avert suppression, normally the warrant application must demonstrate probable cause to believe that a particular person has committed a crime-"the commission element" and that enumerated evidence relevant to the probable criminality likely is located at the place to be searched-"the nexus element". United States v. Fuccillo, 808, F. 2d 173, 175 (1st cir. (cert. denied). The issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application. See e.g., Whiteley v. Warden Wyo. State Penitentiary, 401 U.S. 560, 565, 91 S. Ct. 1031, 1035, 28 L. Ed. 2d 306 (1971). Under the Fourth Amendment "probable cause" standard, the "totality of the circumstances" disclosed in the supporting affidavits must demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U. S. 213, 238, 103 S. Ct. 2317, 232, 76 L. Ed. 2d 527 (1983).

In each case the basis question for the magistrate is whether he has a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched. While the principle facts that supporting probable cause must be "closely related to the time of the issue of the warrant [so] as to justify a finding of probable cause at that time", the timeliness must be "determined by the circumstances of each case."

In order to establish probable cause, an affidavit must "contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched."

It is moreover, imperative that the warrant establish not only this kind of tri-cornered nexus between the criminal act, the evidence to be seized and the place to be searched, but also that the nexus incorporate a temporal dimension. The important privacy interests protected by

3

the Fourth Amendment make it incumbent upon the magistrate to craft the warrant with explicit, clear, and narrowly drawn conditions governing its execution to ensure that the anticipated nexus will actually exist if and when the warrant is executed. The "commission" and "nexus" elements in the "probable cause" analysis each include a temporal component. The issuing magistrate must not only consider the accuracy and reliability of the historical facts related in the affidavits, but must determine, inter alia, whether the facts reasonably inferable from the affidavits demonstrate a "fair probability" that evidence material to the "commission" of the probable crime will be disclosed at the searched premises at the time the search wearrant would issue, rather than at some remote or future time.

The test is whether the magistrate issuing the warrant has a substantial basis for concluding that any of the articles documented in the warrant are probably in the place to be searched. Commonwealth v. Fenderson, 410 Mass. 82, 571 N. E. 2d 11 (1991).

Affidavits must be tested and interpreted by Magistrate and Courts in a common sense and realistic fashion. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not act as a rubber stamp for the police. Implied in these principals is that facts supporting probable cause must be closely related to the time of issue of the warrant so as to justify a finding of probable cause at that time. Sgro v. United States, 287 U. S. 206 (1932). The timeliness must be determined by the circumstances of each case. United States v. Dauphinee, 538 F2d 1. (1st cir. 1976)

The initial affidavit sworn in support of the search warrant's set forth one confidential sources of information as establishing probable cause. This source (Y) was reported to have provided information spanning a period of time within one year of the warrant's application. The defendant asserts three specific defects with this source of information.

4

First, the information was stale, secondly, the affidavit failed to establish probable cause as to the residence searched and third, no independent corroboration existed to support the informant's claim as to the residence.

In this case the affidavit is at best unclear where it alleges "Mike" usually delivers the cocaine but on at least 4 occasions [Y] went to Mike's apartment located at 368 Meadow Street, Chicopee, Mass - the defendant asserts this language falls far short of the level of specificity necessary to establish information connecting criminal activity to the locus to be searched..

Y never indicates the amounts of drugs purchased, the time or place when Y claims to have purchased cocaine in relation to the date of the search. Bearing in mind this information could have been at least a year old at the time it was received, it suffers from staleness. Additionally, Y's information, such as it is, as to the apartment on Meadow Street is not directly corroborated by any police investigation.

Proof must be so closely related to the time of the issue of the warrant as to justify a finding of probable cause at the time. Whether the proof meets this test is determined by the circumstances of each case. In this case a controlled buy at an unknown location within three days of the warrant's issuance is the sole fact alleged to support a search of the residence.

Where an affidavit recites isolated violations it is not unreasonable to believe probable cause dwindles with the passage of time; conversely when an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.

Since drugs are easily moveable the information must support a belief contraband will be present at the time of the search. United States v. Salvucci, 599 F. 2d 1094 (1st Cir. 1979), Rosencrantz v. United States, 356 F. 2d 100 S. Ct. 2147, 448 U. S. 83 (1980).

Deficiencies may be overcome by showing mutual corroboration or independent police corroboration of highly particularized details other than innocuous facts. Commonwealth v. Rice, 47 Mass. App. Ct. 586, 589 (1999).

Where informants do not specify when they make observations; where controlled buy information identifies an isolated transaction, staleness arises quickly as probable cause dwindles. Where there is a demonstrated continuity the passage of time becomes less important than the number and quality of observations which establish continuing criminal activity. Rice supra at 590.

Probable cause to believe a person is guilty of a crime does not necessarily constitute probable cause to search his residence. United States v. Charest 602 F. 2d 1015 (1st Cir. 1979)

The affidavit at issue here is not self corroborating nor does the limited police investigation corroborate in any significant way the likelihood it was reasonable to conclude cocaine would probably be found at the Meadow Street address on the date of the search. The police observed no unusual traffic to and from the defendant's residence indicative of continuing sales from his home, indeed, other than the one controlled buy, from an undisclosed location, the affidavit was completely devoid of any suggestion there was ongoing activity emanating from this residence.

Y's statement that he had been to the Meadow Street location on 4 prior occasions without clearly identifying whatever he had observed or purchased cocaine during the preceding year was singularly ambiguous as well.

The Magistrate was never informed of whether the amounts purchased were small quantities consistent with personal use. Nothing in the affidavit gave the Magistrate a factual basis to conclude cocaine would probably be found there on the <u>date</u> of the search. Significantly,

6

the police never observed the defendant leave his residence with any package or bags. This lack of corroboration is significant when coupled with information it was more probable the defendant kept drugs in his vehicle.

## ANY PERSON PRESENT

A search based exclusively under the language "any person present" in a search warrant is one which should be closely scrutinized. Commonwealth v. Smith, 370 Mass. 335, 348 N. E. 2d 101 (1976).

Only in a few special circumstances will a search warrant aimed principally at the premises also hold valid to include the search of any person present. Commonwealth v. Baharoian, 25 Mass. App. Ct. 55 (1982).

The language <u>any person present</u> does not empower the police to search persons not named or described in the warrant when there is no reasonable basis for anticipating that everyone present is engaged in unlawful activity.

The sufficiency of warrants to search persons identified only by their presence at a specified place will usually be fact dependent, but the burden is on the Commonwealth to demonstrate factually such an affidavit passes constitutional requirements as to a particular individual. See Ybarra v. Illinois, 444 U. S. 85 (1979).

Searches directed against any persons present can only be valid when the underlying circumstances presented to the issuing magistrate <u>clearly</u> demonstrate probable cause as to the described locations and also the probability that all persons present <u>are involved</u> in the criminal activity taking place. Commonwealth v. Smith, 348 N. E. 2d 101 (1976). See also Ybarra v. Illinois, 444 U. S. 85 (1979). Commonwealth v. Sousa, 42 Mass. App. Ct. 186, 675 N. E. 2d 432 (1997).

7

The relevant factors in making a determination of whether such a showing has been made; are the nature of the premises the activity under investigation, and the practicality of specification prior to the service or the warrant. Commonwealth v. Baharoian, 35 Mass. App. Ct. 35, 514 N. E. 2d 685 (1987), Commonwealth v. Frazier, 410 Mass. 235 571 N. E. 2d 1356 (1991), Commonwealth v. Truax, 397 Mass. 174 490 N. E. 2d 425 (1986).

Underlying all of the reported decisions is the fundamental concept that a search or seizure of a person must be based upon a probable cause theory particularized as to that person.

## THE SCOPE OF THE SEARCH

The handgun and ammunition which were items seized by the Chicopee Police Department officers were not particularly descried as being subject to seizure on the face of the warrant. The defendant assumes the government will take the position that these items were seized under the plain view doctrine.

In Horton v. California, 496 U. S. 128 (1990) the Supreme Court defined the contour of the doctrine holding that an essential predicate to the seizure of evidence not within a warrant's provision is that the officers not violate the Fourth Amendment in arriving at the place from which this evidence could be plainly viewed.

Although Horton struck any requirement that discovery of the items must be inadvertent, the officers making such seizure are still required to demonstrate how the items evidentiary value became apparent to the seizing officer. United States v. Rutkowski, 877 F. 2d 139 (1st Cir. 1989)

In this case the defendant claims that seizure of the items outside the scope of the warrant requires an evidentiary hearing if the government claims a right to seizure of the handgun and ammunition.

8

## THE DEFENDANT'S POST ARREST ADMISSIONS

In <u>Miranda</u> the Court expressly disapproved deceptive stratagems such as giving false legal advice, stating: "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." <u>Miranda</u>, 384 U.S. at 476, 86 S.Ct. at 1629.

A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given. See <u>Lynumn v. Illinois</u>, 372 U.S. 528, 534, 83 S.Ct. 917, 920 9 L.Ed.2d 922 (1963)

Whether a confession is a product of coercion may only determined after a careful evaluation of the totality of all the surrounding circumstances, including accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials. See <u>Schnecklothe v. Bustamonte,</u> 412 U.S. 218, 226, 93 S.Ct. 2041, 2047.

Under the Miranda doctrine, "[i]f the individual indicates in any manner, at any time, to or during questions, that he wishes to remain silent, the interrogation must cease." <u>Miranda</u>, 384 U.S. at 473-74. Also, "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." <u>Id.</u> Once counsel is requested, officers cannot comply with <u>Miranda</u> by simply permitting the accused to speak with an attorney outside the interrogation. See <u>Minnick v. Mississippi</u>, 498 U.S. 146, 152 (1990). <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981) requires that officers not reinitiate interrogation without counsel present, notwithstanding the presence of any opportunity of the defendant to consult with counsel. See <u>Id</u>. At 153. Moreover, the law imputes knowledge of invocation of the right to counsel to all law enforcement officers who have contact with the accused. See <u>Arizona v. Roberson</u>, 486 U.S. 675, 687-88 (1988); <u>US. V. Covington</u>, 783 F.2d 1052, 1055 (lst Cir. 1985); <u>U.S. v. Scalf</u>, 708 F.2d 1540, 1544-45 (11th Cir. 1983).

An individual may invoke Miranda rights by refusing to speak with authorities or to answer officers' questions. See <u>U.S. v. Heldt</u>, 745 F.2d 1275 (9th Cir. 1984).
An accused may invoke <u>Miranda</u> rights by choosing to remain silent or by requesting the assistance of an attorney. See <u>Miranda</u>, 384 U.S. at 473-74. If the accused requests to see an

attorney, counsel must be provided before questioning. See <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85(1981) (holding that a criminal defendant, "having expressed his desire to deal with the police on through counsel, is not subject to further interrogation by the authorities until counsel has bee made available to him, unless the accused himself initiates further communication exchanges, or conversations with the police"). Police officers may not violate the Fifth Amendment right to counsel and obtain a valid Miranda waiver if they delay efforts to secure counsel and subsequently elicit a statement from the defendant. See <u>U. S. v. Lucas</u>, 963 F. 2d 243, 246 (9th Cir. 1992).

## UNANNOUNCED ENTRY

As a general rule on executing a search warrant police officers must announce their presence to possible occupants prior to making a forcible entry and the length of delay in entering the premises to enable any occupants to respond, must be a reasonable one on the particular circumstances. <u>United States v. Sarght</u>, 319 F. 3rd 4 (1st Cir. 2004)

There is no inflexible rule regarding the length of time the police must postpone a forced entry following announcement. Each case is assessed in the totality of its circumstances. <u>United States v. Antrim</u>, 389 F. 2d 276 (1st Cir. 2004).

10

## CONCLUSION

For all of the foregoing reasons the defendant's motion should be allowed. As to those matters not susceptible to resolution without an evidentiary hearing, the defendant requests a hearing.

THE DEFENDANT

BY: _____
Vincent A. Bongiorni, Esq.
95 State Street, Suite 309
Springfield, MA. 01103
(413) 732-0222
BBO #049040

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) No. 04-30004-MAP |
| | ) |
| ROOSEVELT ARCHIE | ) |

### AFFIDAVIT IN SUPPORT OF MOTION TO SUPPRESS

Now comes Roosevelt Archie, and being duly sworn, hereby deposes and states as follows: I am the defendant in the above entitled action. I have read the facts contained in a motion to suppress. On the date of my arrest I was at 368 Meadow Street. At some time between 10:30 and 11:00 p.m. there was a thud at the door like someone fell into it. I went over to the door; it was unlocked. As I turned the knob the door opened and a number of police officers moved quickly through the door. They did not announce their purpose or show me a search warrant until they were inside the apartment.

I have read a police report which states that I was read my rights from a Miranda Card. I did not have my rights read to me at the apartment nor did I waive my right to remain silent. I did sign a Miranda waiver much later when I gave a written statement, but I did not during the period of time I was in the apartment.

While I was detained in the apartment the police were seizing items and approaching me with them saying, "is this yours"? or "who does this belong to"? I only spoke to the officer when they engaged in this type of conduct and I never voluntarily relinquished my rights.

Signed under the pains and penalties of perjury this 31st day of January, 2005.

_Roosevelt Archie_
Roosevelt Archie

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, SS.                                          January 31, 2005

On this 31st day of January 2005 before me, the undersigned notary public, personally appeared, Roosevelt Archie, a person known to me to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

*Judith A. Risley*
Notary Public

Judith A. Risley
Notary Public
Commission Expires July 1, 2005